# UNITED STATES DISTRICT COURT
for the
Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>438 DOCKSIDE LANE NW, CONCORD NC,<br>28027 (**"TARGET RESIDENCE"**) | )<br>)<br>)  Case No. 1:22mj389<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A

located in the _____ Middle _____ District of _____ North Carolina _____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 (a)(1) | Possession with intent to distribute controlled substances |
| 21 U.S.C. § 846 | Conspiracy to distribute controlled substances |

The application is based on these facts:
See accompanying Affidavit.

☒ Continued on the attached sheet.
☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ *Joshua S. Grout*
Applicant's signature

Joshua S. Grout, Special Agent, HSI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P 4.1 by telephone.

Date: 09/29/22

City and state: Greensboro, NC

USMJ L. Patrick Auld
Judge's signature

Printed name and title

## ATTACHMENT A

### Property to Be Searched

The property to be searched is the premises at 438 DOCKSIDE LANE NW, CONCORD, NC, 28027 (**TARGET RESIDENCE**).

**TARGET RESIDENCE** is a two-story private residence constructed with tan colored siding for the exterior, white trim, red window shutters and a red door. The driveway to the residence is on the left side of the structure as viewed from the street. The numerics of the address, "438", are dark in color posted horizontally above the front door. Below is a photograph of 438 DOCKSIDE LANE NW, CONCORD, NC, 28027.



## ATTACHMENT B

**Particular Items to Be Seized**

The items to be seized are evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 924(c), including specifically the following:

1. Controlled Substances;

2. Books, receipts, records, notes, ledgers, money orders, and other documents relating to the transportation, ordering, sale, and distribution of controlled substances;

3. U.S. currency, financial instruments, and evidence of financial transactions related to obtaining, transferring, secreting or spending United States currency made from engaging in narcotics trafficking and selling activities;

4. Any records, pay stubs, invoices, receipts, or other documents regarding the earning of legitimate, non-drug related Income;

5. Indicia of occupancy, residency or ownership of the premises, namely utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents;

6. Photographs, videotapes, DVDS, video movie tapes, slides which show people engaging in narcotics use, trafficking, and selling activities;

7. Paraphernalia for the packaging, cutting, weighing, and distribution of controlled substances, such as scales, plastic bags, cutting agents, wax, glass vases, and plastic wrapping paper;

8. Personal telephone and address books, personal digital assistants, letters, cables, telegrams, telephone bills, photographs, communications, fax messages, and personal notes and items reflecting names, identities, addresses, and telephone numbers;

1

9. Vehicle title documents, or automobile registration materials, or car keys;

10. Any safe, lock box, or other container where the items listed in the above paragraphs could be hidden;

11. Weapons, including but not limited to firearms, including handguns, rifles, shotguns, and sharp-edged weapons, and any ammunition, bore brushes and any items associated with weapon protection/ cleaning.

12. Electronic devices but not limited to cell phones, tablets, computers, and electronic media to include data contained within the devices.

If the government identifies seized materials that are potentially attorney-client privileged or subject to the work product doctrine ("protected materials"), the Prosecution Team will discontinue review and seek further relief from the Court.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE PREMISES AT:<br><br>438 DOCKSIDE LANE NW, CONCORD NC, 28027 (**"TARGET RESIDENCE"**) | Case No. 1:22 MJ 389<br><br>Filed Under Seal<br>/PA |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Joshua S. Grout, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I submit this Affidavit in support of an Application for a Search Warrant to search the residence (including all vehicles and outbuildings within the curtilage) at 438 DOCKSIDE LANE NW, CONCORD NC 28027 ("**TARGET RESIDENCE**") further described in **Attachment A**, for the items described in **Attachment B**.

2. I (your affiant) am presently assigned as a sworn law enforcement officer with Homeland Security Investigations (HSI). In that capacity, my duties include investigating federal criminal offenses in the Western and Middle District of North Carolina. During my tenure as a Special Agent, I have completed hundreds of hours of instruction at the Federal Law Enforcement Training Center in Glynco, Georgia (FLETC). Prior to my tenure as an HSI Special Agent, I was a Police Officer with the Charlotte Mecklenburg Police Department (CMPD). During my time at CMPD, I worked as a patrol officer and member of the Special Investigations Bureau – Gang Unit, which investigated state and federal criminal violations of the law. I completed hundreds of hours of basic and advanced law enforcement training covering various

topics. I have drafted and executed over 10 state search warrants and executed three federal search warrants, including numerous warrants for cellular phones and social media accounts. I have made over 200 arrests for various violations of state and federal crimes. Prior to my time as a CMPD Police Officer, I was a Counterintelligence Special Agent in the United States Army. During my time as a Counterintelligence Agent, I investigated violations of the Uniformed Code of Military Justice and national security crimes in Title 18 of the United States Code. I attended over 1,000 hours of basic and advanced training covering various topics related to conducting national security, terrorism, and cyber investigations.

3. The information in this Affidavit is based upon my personal knowledge, training and experience, and information learned, either directly or indirectly, from witnesses, records, and other law enforcement officers and agents. This Affidavit is intended to show merely that there is sufficient probable cause for the requested Warrant and does not set forth all my knowledge about this matter.

4. Based on the facts set forth in this Affidavit, probable cause exists to believe that the **TARGET RESIDENCE** contains evidence, contraband, fruits, and instrumentalities, in connection with violations of 21 U.S.C. §§ 841 and 846; and 18 U.S.C. § 924(c).

## CHARACTERISTICS OF DRUG TRAFFICKERS

5. Based upon my training, experience, and participation in other drug investigations involving large amounts of controlled substances, I know the following to be true about drug traffickers:

   a. Drug traffickers commonly maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale, and distribution of controlled substances;

2

b. Drug traffickers commonly maintain address and/or telephone numbers in books or papers that reflect names, addresses, and/or telephone numbers of their associates in the drug trafficking organization, or of customers;

c. Drug traffickers maintain the aforementioned books, records, receipts, notes, ledgers, etc., where they have ready access to them;

d. Drug traffickers commonly secrete drugs and other contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, businesses, storage units, and/or other locations so that they have ready access to these items, and to conceal these items from law enforcement authorities;

e. Drug traffickers commonly maintain items used to manufacture, conceal, package, and distribute controlled substances within their residences, their businesses, their vehicles, and/or other locations over which they maintain control so that they have ready access to these items, and to conceal these items from law enforcement authorities;

f. Drug traffickers commonly take or cause to be taken photographs of themselves, their associates, their drugs, drug proceeds, and firearms, and they usually maintain these photographs in their possession;

g. Drug traffickers commonly maintain large amounts of U.S. currency used to finance their ongoing narcotics business, as well as money wrappers and currency counting machines, within their residences, vehicles, and other locations over which they have control;

h. Drug traffickers commonly maintain large amounts of U.S. currency used to

3

finance their narcotics business in secure locations within their residences and vehicles, such as safes and lock boxes.

i. The courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, and particularly, trafficking in controlled substances;

j. Drug traffickers commonly equip their residences with surveillance cameras to provide early warning of other criminals who would attempt to rob them of their drugs and proceeds or commit violence against them, and to provide early warning against law enforcement;

k. Drug traffickers commonly use and maintain firearms to protect their drugs and/or drug proceeds;

l. Drug traffickers commonly use cellular telephones and other electronic devices, such as tablets and laptops, to facilitate their drug trafficking activities, and they commonly store the following, among other things, on such devices: records and documents as detailed in subparts a through c above, text messages concerning criminal activity, call details concerning telephone numbers that the device called or received calls from, and photographs of themselves, associates, drugs, contraband, firearms, and drug proceeds; and

m. Drug traffickers frequently maintain the above items in subparts a through l in their residences and in their vehicles, where they have ready access to them.

## PROBABLE CAUSE

6. HSI is conducting a criminal investigation involving Marlon PORTILLO for trafficking narcotics, in violation of federal laws, including, but not limited to, Title 21, United States Code §§ 841(a) and 846 (distribution and conspiracy to distribute narcotics) and Title 18,

4

United States Code § 924(c), (possession of a firearm during drug trafficking). The investigation into PORTILLO's criminal activity is part of a larger investigation involving HSI and the Charlotte Mecklenburg Police Department (CMPD) focused on MS-13[1] in and around the Charlotte area, including Concord and Salisbury, North Carolina. The MS-13 gang is known to distribute narcotics and commit violent crime in the Charlotte area, within the Western and Middle District of North Carolina.

7. In February 2022, federal law enforcement identified PORTILLO as a subject of interest who frequently associated with MS-13 members. Some of the MS-13 members that PORTILLO associates with are currently in Union County jail for kidnapping and armed robbery.

8. In August 2022, agents working on this investigation learned that an undercover CMPD police officer (hereinafter "the UC") was in contact with a subject with phone number 980-267-2912 and Instagram username goatseko31. I know, based on my knowledge of this investigation, that the Instagram account assigned username "goatseko31" belongs to PORTILLO.

9. During their interactions, PORTILLO offered to sell the UC methamphetamine. Specifically, PORTILLO offered the UC four ounces of methamphetamine for $850 dollars. HSI and CMPD then began a series of controlled purchases from PORTILLO by the UC at a location in Charlotte, North Carolina.

10. On August 29, 2022, at approximately 12:00 p.m., law enforcement arranged to purchase two ounces of methamphetamine from PORTILLO for $500 at a Bojangles restaurant

---

[1] Mara Salvatrucha 13 (MS-13) is a transnational criminal organization based in El Salvador and the United States that is involved in violent crime and drug trafficking throughout the United States Honduras and El Salvador.

5

on West Trade Street in Charlotte, North Carolina. PORTILLO arrived at the drug deal operating a black Honda Civic (hereinafter "PORTILLO'S CIVIC"). PORTILLO then sold the UC 62.4 grams of methamphetamine. The UC captured the drug deal on an audio recording device.

11. That same day, law enforcement monitored PORTILLO's Instagram account and observed posts depicting a video of suspected marijuana, bulk cash in his car, and the words "tap in." I know, based on my training and experience, that the phrase "tap in" is commonly used by drug traffickers to tell others to contact them about purchasing narcotics. Also, that same day, law enforcement observed posts on PORTILLO's Instagram account depicting a screen with prices and emoji's stating that an "egg" of marijuana cost $80-$160, a quarter pound or brick costs $250-$450, a half-pound costs $500-$700, and a pound costs $850-$1200. At approximately 12:00 p.m., PORTILLO posted a video of himself driving in his vehicle taking the off ramp from I-77 South at West Trade Street where the controlled purchase was scheduled to take place. In the video, PORTILLO had a tan Smith and Wesson SD-40 handgun on his lap. Law enforcement believe that PORTILLO brought this firearm to the controlled purchase due to the time and location of the deal and when this video was posted.

12. On September 4, 2022, at around 10:00 a.m., law enforcement observed posts on PORTILLO's Instagram account depicting a large bag containing a substance believed to be crystal methamphetamine. At approximately 3:56 p.m., PORTILLO posted three emojis of a leaf, coconut, and ice cube that I know, based on my training and experience, represents marijuana, cocaine, and methamphetamine, respectively. At approximately 5:01 p.m., PORTILLO posted "tap in" with three emojis of a leaf, coconut, and ice cube. At approximately

6

9:07 p.m., PORTILLO posted a baggie containing a white powdery substance consistent in appearance with cocaine.

13. On September 6, 2022, law enforcement arranged to purchase more methamphetamine from PORTILLO. The UC contacted PORTILLO through WhatsApp[2] using phone number 980-267-2912 and chose the same Bojangles restaurant in Charlotte for the deal. At around noon, PORTILLO arrived at the Bojangles in PORTILLO'S CIVIC with an unknown Hispanic male passenger. PORTILLO then met with the UC and sold 119.3 grams of methamphetamine for $900. PORTILLO's passenger counted the money during the deal and PORTILLO then left the Bojangles' parking lot. The UC captured the drug deal on an audio recording device.

14. Also on September 6, 2022, law enforcement observed posts on PORTILLO's Instagram account depicting suspected marijuana and various emojis for narcotics. At approximately 8:00 p.m., PORTILLO posted a video of a black and tan Smith and Wesson SD40 firearm, along with a black and green Polymer 80 P80 firearm with an extended magazine while inside of a residence.

15. On September 8, 2022, law enforcement observed posts on PORTILLO's Instagram account depicting an AR-15 style rifle, a baggie of white powder believed to be cocaine with a coconut emoji, and multiple pound sized vacuum sealed bags of marijuana. All of these posts captured the items described from the inside of a residence.

16. On September 12, 2022, the Honorable Joe L. Webster, United States Magistrate Judge, authorized the tracking of PORTILLO'S CIVIC for a period of 45 days. *See* 1:22-mj-

---

[2] "WhatsApp" is an end-to-end encrypted instant messaging service frequently used by narcotics traffickers and MS-13 gang members to communicate due to its lack of security and ease of use.

354. Law enforcement placed a tracking device on PORTILLO'S CIVIC while the car was parked outside of the **TARGET RESIDENCE**.

17. On September 13, 2022, law enforcement arranged to purchase four ounces of methamphetamine from PORTILLO at the same Bojangles restaurant in Charlotte. Law enforcement monitored the tracker data and that data supported that at 8:25 p.m., PORTILLO'S CIVIC left the **TARGET RESIDENCE**. At 8:27 p.m., PORTILLO'S CIVIC arrived in the area of 2924-2918 Lancaster Street in Concord, North Carolina. At 8:29 p.m., PORTILLO'S CIVIC left Lancaster Street and drove to the deal location. PORTILLO'S CIVIC did not make any other stops before PORTILLO arrived in the car at the Bojangles restaurant at approximately 8:54 p.m. During the deal, PORTILLO sold the UC 79.2 grams of methamphetamine for $900. At 8:55 p.m., PORTILLO left the Bojangles parking lot in PORTILLO'S CIVIC. At 9:15 p.m., PORTILLO arrived back at the **TARGET RESIDENCE**. The vehicle tracker data supports that PORTILLO drove straight to the **TARGET RESIDENCE** following the drug sale.

18. Law enforcement determined that PORTILLO sold the UC less than the agreed upon four ounces. The UC and PORTILLO subsequently spoke about the weight discrepancy. PORTILLO offered to provide the additional methamphetamine to the UC at the **TARGET RESIDENCE**. The UC told PORTILLO he would wait for the next deal. PORTILLO pledged to make up the amount during the next drug deal.

19. On September 15, 2022, law enforcement observed posts on PORTILLO's Instagram account depicting large bags of suspected marijuana inside of a residence along with an AR-15 style rifle with a blue bandanna tied around the rifle. I know, based on my training and experience, and knowledge of this investigation, that bandannas tied around weapons are

8

common for gang members to promote their gangs. In addition, a blue bandanna is frequently used by MS-13 to convey membership in that particular gang.

20. On September 22, 2022, at around 3:20 p.m., law enforcement observed posts on PORTILLO's Instagram account depicting clear plastic baggies of suspected cocaine and methamphetamine.

21. On September 22, 2022, law enforcement arranged to purchase methamphetamine from PORTILLO. Between the hours of 2:58 p.m. and 3:40 p.m., law enforcement confirmed through the tracker data that PORTILLO'S CIVIC was parked at the **TARGET RESIDENCE**. At approximately 3:40 p.m., PORTILLO left the **TARGET RESIDENCE** in PORTILLO'S CIVIC. At 3:56 p.m., law enforcement observed, on PORTILLO's Instagram account, a picture of PORTILLO driving on I-85 with a handgun tucked between the driver's seat and center console. The vehicle tracker data confirmed that PORTILLO'S CIVIC was on I-85 at the time of the post. PORTILLO arrived at the deal in PORTILLO'S CIVIC. During the deal, PORTILLO sold the UC 136.43 grams of methamphetamine in clear plastic baggies that had the same appearance as those depicted on PORTILLO's Instagram account earlier that day, In addition, PORTILLO was wearing the same clothing that he was wearing at 3:56 p.m. in the picture posted to his Instagram account shortly and before the drug deal.

22. I monitored the vehicle tracker data and confirmed that PORTILLO'S CIVIC is frequently parked at the **TARGET RESIDENCE**. PORTILLO'S CIVIC was previously registered to Yessika Lovo, who is believed to be PORTILLO's girlfriend. As of September 22, 2022, PORTILLO'S CIVIC was registered to PORTILLO and the vehicle registration lists the **TARGET RESIDENCE**. A check of multiple law enforcement databases shows PORTILLO to reside at **TARGET RESIDENCE**.

23. Your Affiant believes a search of **TARGET RESIDENCE** will produce evidence and proceeds of PORTILLO's illegal drug distribution activities.

## CONCLUSION

24. In summary, based on the facts set forth in this Affidavit, and based on my training, experience, and knowledge of this investigation, I submit that probable cause exists for a Search Warrant authorizing the search of the 438 DOCKSIDE LANE NW, CONCORD, NORTH CAROLINA (**TARGET RESIDENCE**), described in **Attachment A**, for evidence, contraband, fruits and instrumentalities, and property in connection with violations of 21 U.S.C. §§ 841 and 846, and 18 U.S.C. §§ 924(c) as described in **Attachment B** respectively. Investigators believe based on electronic and physical surveillance that PORTILLO lives and spends most of his time at **TARGET RESIDENCE**.

Respectfully,

*/s/ Joshua S. Grout*
Joshua S. Grout
Special Agent, HSI

**Affidavit Reviewed by Assistant United States Attorney**

In accordance with Rule 4.1(b)(2)(A), the Affiant attested under oath to the contents of this Affidavit, which was submitted to me by reliable electronic means, on this 29th day of September, 2022.

10